Case No. 15-5314, William S. Price, Appellate v. U.S. DOJ Attorney Office, et al. Mr. Burok for the Amicus Curiae, Mr. Fassenroth for the Appellees. Good morning, Your Honors. My name is Sean Hopwood, and I am a teaching fellow at the Georgetown Appellate Litigation Program. And I want to introduce my student who is going to be arguing the case, a student counsel, Benjamin Burok. Thank you. Thank you. Thank you, Your Honors, and may it please the Court. Congress carefully enumerated nine bases for withholding in FOIA to the exclusion of all others, and it required disclosure to any person that makes a FOIA request. That text is reflective of FOIA's overriding policy, which is that everyone have equal access to the same information. FOIA waivers are inconsistent with that statutory scheme for two reasons. First, because they result in people having different access to the same information, thereby returning us to a system that predates FOIA that Congress already rejected. Isn't it a bit much, in your briefs you called this, if we were to enforce the waiver, you say it would be a tenth exemption. I think that's the phrase that's used. Isn't that overstating things a bit? An exemption takes a category of documents and keeps the public from it altogether. That's not what's going on here. These documents aren't kept from everybody in the public. They're just kept from Mr. Price because of a contractual arrangement he made. So haven't you overstated your argument in this tenth exemption? Your Honor actually brings up a good point. Thank you. The fact that an exemption applies equally across the board to everyone. And that's another indication in FOIA that there's a fundamental principle in it that Congress enacted that everyone have equal access to that information. So the fact that Mr. Price is being denied information that his aunt can then get is symptomatic of waivers' inconsistency with the statute and with the equal access principle that Congress enacted. I still don't understand what that has to do with whether someone can waive it. It's not like we're creating a new exemption or exempting people from FOIA who shouldn't be. It's his choice. Well, that's true. It's his choice. But when Congress enacts the statute, the mechanism by which it achieves its goal is to ensure that everyone has equal access. And waivers contravene that principle because it then happens that person A can get documents that person B cannot. Then it's not for Mr. Price. It's not for the government. And it's not for them to team up and say that, okay, we know a public right. We know this is a public right that guarantees equal access to everyone. But we're going to turn it into a private right that doesn't. Let me pose to you a hypothetical. And remember, it's a hypothetical, so I know it's not your case. But the hypothetical involves a FOIA request for three documents. We'll call them documents A, B, and C. The agency refuses to turn over the documents. Litigation ensues, and then there's a settlement. And in terms of the settlement, the agency says, you can have document A, but you can't have document B or C. The settlement proceeds apace. Sometime later, the petitioner decides, no, I'd really like to get B and C. So he comes back and asks for B and C. The agency says, sorry, we have an agreement. But you don't get them. What comes of that? Is your argument that that agreement's not enforceable because the only way that a document can be kept from the public is if it falls within one of the exemptions? That seems to me to be the force of your argument. Where am I misunderstood? So we don't think that that would be enforceable because, again, then it results in treating different people differently. But you aren't going to have any settlements of FOIA cases, right? It's also not inconsistent with waivers to treat retrospective settlements of claims already accrued differently than prospective waivers of claims yet to be accrued. And I think that's reflected in the FLSA cases in Barentine and Brooklyn Savings. So, for example, their minimum wage provisions are unwaivable in the FLSA. And yet when an employee sues his employer and they settle those claims, there's nothing wrong with that settlement. And that settlement will be enforced. It becomes a problem if then the employee is waiving prospective minimum wage claims that may accrue in the future. So if the Court's concerned about settlements, those are easily distinguishable here. And they're not inconsistent with disallowing FOIA waivers. Let me ask you about some of your other arguments for not recognizing this waiver. One is that we can't recognize this waiver because FOIA is related to unwaivable rights, right? Brady and ineffective assistance of counsel. That's part of it, Your Honor, yes. And you cite Gillen for that, for the ineffective assistance. But Gillen requires a colorable claim of ineffective assistance, doesn't it? Yes. So how does that fit in? What does that language tell us? We don't have an ineffective assistance claim here. You're just arguing that we can't enforce any FOIA waivers because of the possibility that someone might have a colorable ineffective claim. That's right, Your Honor. We cite Gillen for the proposition that appeal and collateral attack waivers are not absolute. And the Court has actually carved out exceptions to those waivers. Now, FOIA requests can actually help get evidence that will then allow the defendant to make his way through those exceptions, so to speak. So whereas the government can't force a complete and total waiver of appeal and collateral attack rights because of those exceptions that the Court has carved out, the government then takes a step back and says, okay, how can we cut off the best avenue the defendant has to then get information that will allow him to work his way through that exception? And that's what FOIA waivers do. And we've cited a few cases in which criminal defendants have found evidence of ineffective assistance or Brady material through FOIA and then have used those to make their way through the exceptions for appeal and collateral attack waivers. So that's why we cite Gillen. We're not alleging here that there is ineffective assistance. But compounding the problem is the fact that there's no limiting principle here. If waivers are allowed, nothing stops the government from extracting them in context wholly apart from the plea bargaining context. There is a limiting principle, and it's been set out in Justice O'Connor's opinion earlier, that is, is there an interest, is there a criminal justice interest in the waiver? That's the limiting principle. Now, that doesn't help the government in this case, but going forward, that would be a limiting principle, wouldn't it? That's a limiting principle in terms of what waivers can be included in a plea deal, but it's not a limiting principle in terms of where FOIA waivers can be included in general. So, for example, if the government reduces someone's Social Security benefits and then that person files a FOIA request to try to find out what's going on and they challenge the reduction in benefits and the government says, okay, we'll reinstate your benefits, but you have to agree to waive your FOIA rights going forward, that's this information. Nothing stops the government from doing that if waivers are allowed here. But in both cases, it results in people being treated differently, and then when you consider the fact that then these can span the range. You don't need to make such a broad argument to prevail here, do you? I mean, that's the argument that you've made is that they're not waivable, but isn't there an argument that you could prevail if FOIA rights are waivable? Well, if FOIA rights are— Why make such a broad argument? Well, I think it's just indicative of how FOIA waivers undermine FOIA's statutory policy. So FOIA adopts an end goal of getting information out there to the public. The means that Congress chose to achieve that goal is ensuring that everyone has equal access. If we don't agree with you that Congress has forbidden waivers, what then? Well, then we would ask for remand based on the district courts not being adequately apprised by the government of whether all the documents are within his waiver. So here the EOUSA never even invoked the waiver, and yet the district court held that any documents the EOUSA has are covered by his waiver anyway. And there's no way for the district court to have known that without a declaration and much less without the EOUSA even invoking the documents. And then Mr. Hardy put forth a declaration that essentially said everything here is covered by his waiver, but that gave no direction to the district court as to whether these documents are, in fact, covered by the waiver. The district court needs something more than that, and the case law bears that out as to whether the documents are, in fact, covered. So just pursuing Judge Griffith's question for a second, he mentioned Justice O'Connor's concurring opinion in Town of Newton, I guess. The court there said that it was okay to require a waiver of 1983, the right to file a 1983 case, which seems like this. Why is this any different? Well, because 1983 doesn't embody within it this equal access principle. Sure it does. 1983 is the way in which you challenge violations of fundamental rights. Everybody has that right. Well, no, it's true in the sense that everyone has the right, but FOIA is unique in the sense that it wants everyone to have access to the same information. Oh, so you think this are – suppose we don't accept, given – we'll go back to Judge Griffith's questions. Suppose we don't accept your argument that this somehow violates FOIA's principle that the identity of the requester is irrelevant, right? That's your point. The identity of the requester is irrelevant. Suppose we just think, well, this is just a straightforward waiver case. It doesn't implicate the broad goal of FOIA in that sense. Does that mean then that your argument that this is not a legitimate issue for plea bargaining fails too? I thought these were independent arguments. No, Your Honor. It doesn't mean it fails because the text itself leads to the same conclusion. So then how do you distinguish? If I ask – if I don't accept your FOIA argument, you can't answer my 1983 question by citing FOIA. Well, that – At least I don't think you can. Justice O'Connor's concurring opinion, Ron Marie, was about whether the waiver in a plea deal has a sufficient nexus to the criminal process. Yeah, exactly. Right. And we're not saying that FOIA waivers don't have a sufficient nexus to the criminal process. The argument I'm making with the no limiting principle point is that it doesn't stop the government from extracting waivers in non-criminal contexts. And whether there is a nexus there or not is irrelevant to Ron Marie's analysis. And so – Well, but I go back to Town of Newton. That was a criminal case, and the waiver was a waiver of 1983 rights. No, that – Isn't that right? Am I missing that? No, no. You're right, Your Honor. So what's the difference? Well, the difference is that in Brummery, the challenge was to whether there is a nexus between the waiver in that case and the criminal process, and the court said that there was. And we agree that there is a nexus between FOIA waivers and the criminal process. We're just saying that notwithstanding that nexus, it can't be waived because waivers are contrary to FOIA's statutory policy. That's what I said. You see, you keep going. If we don't accept your – that argument, if we don't think that FOIA's goal, that the fundamental principle of FOIA, that the identity of the requester is irrelevant, that is, that everyone should have equal access, if we just see this as a straightforward waiver case, as Judge Griffith said in his question, like if someone waived one individual person, then tell me how you distinguish the 1983 case. Well, based on FOIA's text then. FOIA says in 552A3A that the government shall disclose information to anyone that requests it. Do you have anything else? No. But – sorry. Did you – Sorry? Did you have anything else? No. Okay. Thank you. We'll hear from the government. Good morning. Peter Fafneroth with the Department of Justice. May it please the Court. As the Court's already recognized, this case reaches this Court after substantial proceedings with a plea that has already been looked at under Section 2255. A certificate of appealability has already been denied by the District Court in Missouri, as well as the – Yeah, we got all that, but that's got nothing to do with – the waiver was voluntary. The question here is can it be enforced, right? That is correct. Okay. So why don't you go to that? Okay. Yeah. So there is no statutory language that supports their argument. The language that they point to simply says that the list of exemptions in the FOIA is a finite one. It does not in any way speak to the waiver issue. And there is, of course, a general supposition that all statutory rights can be waived. What's the criminal justice interest in a FOIA waiver in a sex offender case? Well, there is the interest in precluding further harm to the victims. That's not the argument you all made. The one that you made is the public interest in the efficient and effective prosecution and conviction. What does FOIA have to do with that? Efficient and effective prosecution of sex offenders. That's the argument you all made. Sure. That's an additional argument, Your Honor, that the general purpose of plea agreements is finality and bringing criminal proceedings to a close. And this was not an all-purposes FOIA waiver directed at Mr. Price. This was a waiver specifically directed at his criminal prosecution and the investigation that led to it. And trying to bring closure to that criminal proceeding was the purpose of this FOIA waiver. So it was nothing about the sex offender part of it? It's not specific to the sex offender purpose. So how frequently do FOIA waivers appear in plea agreements? They increasingly appear in plea agreements, and it is for those finality purposes and also related to the waiver. Do you know where? I mean, I have to tell you, I called around through my clerk network, people who have clerked in other district courts. No one except in Washington has heard of FOIA waivers. Did I not do a broad enough survey? Your Honor, I haven't done a comprehensive survey myself, but I can. Are there any? Two questions. Yes. How typical are they here? And two, do you know whether they're used anywhere else? Yes, I do. Okay. So last year I litigated the case in the district court called Shoal, which is cited in our brief, and that arose out of Indiana. Right. This one obviously came out of Missouri. There are cases cited in the papers out of North Carolina, I believe Virginia, a number of other states. So they're not ubiquitous, but they are increasingly used, and it is for the same finality purposes I was explaining before. And there's also an administrative burden issue that this case actually does tee up. The prisoners, frankly, have a lot of time on their hands, and they write a lot of FOIA requests, and it is burdensome to agencies, especially like the FBI and the Executive Office of the U.S. Attorneys. And what about their argument that the waiver of FOIA is critical to unwaivable rights, like ineffective assistance and Brady? A few points, Your Honor. First of all, I don't believe it is critical to Brady. To the contrary, the criminal discovery process is the best-suited vehicle for exposing Brady violations. It is an issue that courts are highly attuned to, and where Brady violations do occur, and I would submit that they are not exceedingly typical, where they do occur, the Brady process ferrets them out. And that happens through pretrial proceedings, through subsequent proceedings, through 2255s, and Brady is a constitutional right, and that is something which far transcends what the statutory rights given by FOIA provide for it. But FOIA does reveal Brady violations. I mean, you concede that in your brief, and the amicus cites several such cases, right? I mean, you're right that the discovery process is one way, but FOIA does reveal Brady violations. It certainly, like any number of other ways one might discover something, is a way that one might find a Brady violation. And you talk about finality, the finality going. Is there some way that a FOIA waiver contributes to finality, other than the fact that it doesn't get you Brady material or ineffective assistance and counsel material? It cuts off that avenue, to be sure, but is there some other finality value involved here? Allowing the FBI and the prosecutors to move on and stop responding to FOIA requests for things that were fully litigated before, and the much more comprehensive Brady process. What about the fact that they do uncover Brady violations on occasion, and they do come up with ineffective assistance, evidence of ineffective assistance and counsel? Those are pretty weighty concerns. I don't dispute that ineffective assistance and Brady violations are substantial concerns, but this is a vehicle that a party may knowingly waive. So if one has already looked into the voluntariness and knowingness of the plea agreement in the first place, which is really the threshold inquiry, and the criminal defendant made a knowing and voluntary waiver at that time, then the fact that he has cut off one of numerous different paths to ask some more questions about his criminal investigation and prosecution is a decision that he made voluntarily and knowingly. But there are decisions that a defendant can make voluntarily and knowingly, which a court would say, nevertheless, we're not going to permit waiver under that circumstance, correct? That's correct, Judge Brown. But those are the contexts in which those have occurred for criminal defendants are ones that go directly to structural criminal defense rights during the trial process, things like prospective waivers of the Speedy Trial Act or the right to be present during trial. FOIA is far afield from those kinds of considerations. If the Court has nothing further, I would ask that the decision be affirmed. Anything else? Okay. Thank you. Did Mr. Brock have any more questions? Any more time? You can take two minutes if you'd like it. Thank you. Your Honors, the government argues here that there's an interest in finality, but that's simply not the case. So in many cases, like the one here, the waiver can turn around to someone else and ask them to make a request for them. And in that case, the information is going to get out there anyway. It's going to get to the defendant, and so there is no interest in finality there. Now, in other cases where waivers actually do have their intended effect, the interest in finality is already served by appeals and collateral attack waivers. There's nothing further that FOIA serves other than to evade the Guillen limits. And that's what distinguishes this case from the 1983, is that that's the only nexus here, the fact that it helps them evade those limits. And it's the same thing with efficiency. With efficiency, the government mentioned that there's an administrative burden, but Congress already weighed those scales, and it said this is the amount of FOIA litigation we're okay with, and it's not for the government, it's not for a private party to say, sorry, Congress, you allowed for too much FOIA litigation. Do you know the answer to our questions about how extensive these waivers are? Do you know? I don't know exactly, but we actually did find a Law Review article that was cited in our opening brief, although not for this point. It seems that FOIA waivers are extracted in about 25% of arson and robbery cases. So that's the extent of the information that we have. But if there are no further questions, Your Honors. Anything else? Thank you, Mr. Beck. You and the Georgetown program were appointed as amicus, and the Court's grateful to you and Mr. Hopwood and the rest of your colleagues for your assistance. Thank you. Case is submitted.
judges: Tatel, Brown, Griffith